IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON BYRON FICKES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 3:13-288 |
| CAROLYN COLVIN, Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge

# OPINION
and
# ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 9 and 14). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 10 and 15). Plaintiff also has filed a Concise Statement of Material Facts and a Reply Brief. (Docket Nos. 11 and 16). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (Docket No. 14) and denying Plaintiff's Motion for Summary Judgment. (Docket No. 9).

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI")

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013 and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

under Title XVI of the Act. Plaintiff applied for DIB and SSI in November 2010. (R. 171-83). In his applications, he alleged that he had been disabled since May 1, 2009. Id. Administrative Law Judge ("ALJ") Marty R. Pillion held a hearing on April 5, 2012, at which Plaintiff was represented by counsel. (R. 28-66). Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 57-65). In a decision dated June 15, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 14-24). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on November 1, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-4). Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 9 and 14). The issues are now ripe for my review.

## II.  LEGAL ANALYSIS

### A.  STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial

2

evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts

to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B.  **WHETHER THE ALJ ERRED IN DETERMINING THAT PLAINTIFF HAS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM SEDENTARY WORK**

The ALJ determined as part of the sequential evaluation process that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he was limited to occasional balancing, stooping, and climbing ramps and stairs; no kneeling, crouching, crawling, balancing or climbing ropes, ladders, or scaffolds; no exposure to hazards such as heights or moving machinery; no exposure to weather, wetness, temperature extremes, humidity, or atmospheric conditions such as smoke, fumes, odors, gases, and poor ventilation; and occasional speaking. The ALJ further limited Plaintiff to simple, routine, repetitive tasks and simple work-related decisions; infrequent changes in work setting defined as no more than one per day; occasional interaction with co-workers and supervisors; and no interaction with the public. The ALJ concluded that Plaintiff's need to elevate his legs would be accommodated by the normal morning, lunch, and afternoon breaks. (R. 19). Plaintiff argues that the ALJ's RFC finding is not supported by the record evidence. Specifically, he contends that the ALJ failed to include Plaintiff's need for a sit/stand option and insufficiently accounted for his need to elevate his legs. Pl.'s Br. [ECF No. 10] at 2-3. This argument is without merit.

Sedentary work involves lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is

4

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a). The responsibility for deciding a claimant's RFC rests with the ALJ and is based on the entire record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.

In this case, Plaintiff's argument that the ALJ insufficiently accounted for Plaintiff's alleged need to alternate sitting and standing is unpersuasive. As an initial matter, although the ALJ acknowledged Plaintiff's allegations regarding sitting limitations, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. (R. 19). The ALJ also declined to give great weight to the opinion of Ann Smith, M.D., who examined Plaintiff on March 6, 2012 and opined, <u>inter alia</u>, that Plaintiff could sit for a total of two hours in an eight-hour work day. (R. 21, citing Ex. 5F). Essentially, the ALJ found that such severe limitations were inconsistent with the totality of the evidence, including generally unremarkable or mild diagnostic studies and the claimant's activities of daily living. (R. 21). As set forth more fully below, the ALJ's findings regarding Plaintiff's credibility and the weight given to Dr. Smith's opinions are supported by substantial evidence. Thus, the ALJ did not err by failing to include greater sitting/standing restrictions in his RFC finding.

Even if Plaintiff did require a sit/stand option as alleged, the record does not support remand to the Commissioner on this issue. As recognized in Social Security Ruling 96-9p, "the occupational base for a full range of unskilled sedentary work will be eroded" in cases where an "individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically." S.S.R. 96-9p, 1996 WL 374185, at *7. Such situations, however, do not mandate a finding of "disabled." Rather, the Administration recommends that

5

the ALJ "consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." Id.; see also S.S.R. 83-12, 1983 WL 31253, at *4 ("In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base."). Contrary to Plaintiff's suggestion, the record contains vocational expert testimony on this very question. Specifically, Plaintiff's own counsel asked the VE directly whether the three jobs she identified – surveillance systems/alarm monitor, assembler, and document preparer – would permit a worker to sit/stand at his option. (R. 63-64). In response, the VE testified that the sit/stand option would not be a problem for the surveillance systems/alarm monitor position. (R. 64). According to the VE, there are 10,000 surveillance systems/alarm monitor positions in the national economy, well more than a "significant number" of jobs that Plaintiff could perform.[2] See, e.g., Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (200 jobs in the national economy was a significant number); Bennett v. Barnhart 264 F. Supp. 2d 238, 259 (W.D. Pa. 2003).

Thus, even assuming that Plaintiff required the ability to sit/stand at his option, the vocational expert testimony supports the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff could perform. Accordingly, I find that remand is not appropriate on this issue.

Plaintiff also argues, in cursory fashion, that the record does not support the ALJ's finding that normal morning, lunch, and afternoon breaks would accommodate Plaintiff's need to elevate his legs. Pl.'s Br. [ECF No. 10] at 3. He contends that this finding contradicts Dr. Smith's

---

[2] Apparently recognizing this testimony, Plaintiff attempts to circumvent it by suggesting that he could not perform the surveillance systems/alarm monitor position because that position requires communication skills for which Plaintiff is limited. Pl.'s Br. [ECF No. 10] at 2-3. This argument is without merit. As an initial matter, the ALJ included any communication limitations supported by the record in his RFC finding. See R. 19 (limiting Plaintiff to occasional speaking, occasional interaction with co-workers and supervisors, and no interaction with the public). Moreover, in response to Plaintiff's counsel's questioning, the VE testified that a limitation to occasional speaking would not preclude a worker from performing the surveillance systems/alarm monitor position. (R. 64).

March 2012 examination and Plaintiff's own testimony.  Id.  This argument is unpersuasive. Again, as set forth more fully below, substantial evidence supports the ALJ's finding that Plaintiff's testimony was not fully credible and his decision to give only limited weight to Dr. Smith's opinions.   Plaintiff does not point to any other evidence of record supporting any greater limitations due to the swelling of his legs.

In short, I agree with defendant that the ALJ based his RFC assessment on the record evidence which included treating physician opinions that plaintiff could work; generally normal physical examinations; unremarkable clinical findings; and the performance of an array of activities by Plaintiff.  See R. 19-22 and exhibits cited therein.  Because substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff's alleged impairments did not preclude his performance of certain sedentary work, the court finds no error on this issue.

C. **WHETHER THE ALJ INADEQUATELY ADDRESSED EVIDENCE OF PLAINTIFF'S PAIN**

Plaintiff argues that the ALJ failed to address the issue of Plaintiff's pain as required by the regulations.   In particular, Plaintiff contends that the ALJ failed to list pain as a limiting factor even though pain was addressed in the medical reports of three physicians, Dr. Smith (Ex. 5F), Dr. Milad Shaker (Ex. 7F), and Dr. George Zlupko (Ex. 6F).   I disagree.

Pursuant to 20 C.F.R. §§ 404.1529 and 416.929, the Commissioner must consider all "symptoms, including pain," in the disability determination.   Statements of pain alone, however, are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged."   20 C.F.R. §§ 404.1529(a); 416.929(a); SSR 96-7p.   Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, then the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to

determine how the pain limits the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p. In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence he rejects and the reasons for discrediting such evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). Ordinarily, an ALJ's credibility determination is entitled to great deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Plaintiff's assertion that the ALJ failed to consider his pain complaints and any objective findings related thereto is incorrect. To the contrary, the ALJ considered plaintiff's complaints of pain and properly concluded that those complaints were not fully credible and did not limit plaintiff's ability to perform sedentary work. The ALJ directly addressed Plaintiff's allegations that his impairments caused severe pain and did not reject his allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in his RFC finding. See R. 19 (RFC finding containing limitations on, inter alia, balancing, stooping, climbing, kneeling, crouching, and crawling). Nevertheless, the ALJ discussed the fact that Plaintiff's

8

self-reported activities of daily living were inconsistent with an individual experiencing totally debilitating symptomology. (R. 21). For example, Plaintiff reported that he was able to care for his son, attend church, and shop. See id. The ALJ also thoroughly analyzed the medical evidence, including relatively mild or unremarkable diagnostic findings that were not consistent with a finding of totally disabling pain. See R. 19-22 and medical records cited therein.

Plaintiff's allegation that the ALJ specifically failed to address his pain as reflected in Dr. Smith's, Dr. Shaker's, and Dr. Zlupko's reports is likewise groundless. With respect to Dr. Smith, a treating physician who examined Plaintiff in March 2012, the ALJ actually acknowledged her notes as evidence that Plaintiff experienced pain in both hips that is exacerbated by obesity and that he was diagnosed with osteoarthritis of both hips and Calve-Legg-Perthes disease. (R. 20). The ALJ also cited as evidence Dr. Smith's representation that Plaintiff had experienced shortness of breath with exertion and chest pain, and had been diagnosed with obesity, chronic obstructive pulmonary disease, and gastroesophageal reflux disease. Id. Consistent with applicable regulations, however, the ALJ appropriately gave Dr. Smith's opinions regarding the degree of Plaintiff's resulting functional limitations limited weight after determining that they were inconsistent with the totality of the evidence, including the generally mild and unremarkable diagnostic studies and the Plaintiff's activities of daily living. See R. 21; 20 C.F.R. §§ 404.1527; 416.927 (the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record).

Plaintiff's contention that Dr. Shaker's and Dr. Zlupko's records further support Plaintiff's alleged pain is simply incorrect. The cited evidence from Dr. Zlupko merely summarizes a January 31, 2012 consultation regarding an abnormal CT of Plaintiff's chest. Ex. 6F (R. 403-405). Dr. Zlupko's record does not reflect any pain complaints. To the contrary, the notes indicate that Plaintiff denied chest pain and that, while he appeared morbidly obese, there were

9

no signs of acute distress present and no apparent discomfort. (R. 404). Dr. Shaker's records relate to Plaintiff's brief hospitalization from July 25-27, 2012 after a fall/fainting episode. Ex. 7F (R. 419-20). Although Dr. Shaker's notes reference Plaintiff's diagnoses of obesity and edema, the records do not support a finding of disabling pain resulting from those conditions. Rather, the records state that Plaintiff had normal test results, including a stress test and echocardiogram, that he was "feeling better" and "back to his baseline," and that he was going to be discharged on the same home medications without any changes. See id.

For all of these reasons, I find that substantial evidence supports the ALJ's ruling and his rejection of parts of Plaintiff's testimony as not fully credible. See Burns, 312 F.3d at 130.

### C. **WHETHER THE ALJ FAILED TO COMPLY WITH AGENCY POLICY ON OBESITY**

Plaintiff argues that the ALJ failed to Comply with agency policies concerning obesity. Pl.'s Br. [ECF No. 10] at 4-5 (citing Social Security Ruling 02-1p). Specifically, Plaintiff contends that the ALJ failed to (1) address Plaintiff's obesity as a severe impairment at Step 2; (2) evaluate the severity of Plaintiff's impairments in respect to meeting or equaling the Listings of Impairments at Step 3; and (3) consider obesity in assessing Plaintiff's RFC, especially regarding the sit/stand option. Id. This argument is entirely without merit.

First, Plaintiff's allegation that the ALJ failed to address his obesity as a severe impairment at Step 2 grossly misstates the facts. As set forth in bold in his findings of fact and conclusions of law, the ALJ found that Plaintiff had numerous severe impairments, including obesity. See R. 16 (naming "obesity" first on a list of over 20 severe impairments). Likewise, at Step 3, the ALJ explained that he considered all of Plaintiff's impairments, both singly and in combination, and that none of them met or equaled the severity of any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, App'x 1. See R. 17 (considering, inter alia, sections 1.00 (musculoskeletal system); 3.00 (respiratory system); 4.00 (cardiovascular system); 11.00 (neurological); and 12.00 (mental

disorders)). Thirdly, the ALJ plainly considered obesity in assessing Plaintiff's RFC. In addition to explaining that he considered all of Plaintiff's symptoms in reaching his RFC finding, the ALJ specifically cited treating physician notes indicating, inter alia, that Plaintiff's obesity exacerbated his hip pain and that Plaintiff experienced swelling in his legs and antalgic gait due to morbid obesity and peripheral vascular disease. See R. 20 (citing Ex. 5F). Although, as explained above, the ALJ appropriately gave the physician's opinions regarding the degree of Plaintiff's resulting functional limitations limited weight after determining that they were inconsistent with the totality of the evidence, he nevertheless incorporated numerous limitations related to Plaintiff's obesity and other complaints in his RFC finding See R. 19-22 (limiting Plaintiff to sedentary work with no balancing; no climbing ropes, ladders or scaffolds; no kneeling, crouching, and crawling; no exposure to hazards such as heights or moving machinery; and no exposure to weather, wetness, temperature extremes, humidity or atmospheric conditions such as smoke, fumes, odors, gases, and poor ventilation).

Plaintiff's argument that his obesity required a sit/stand option does not change this result. As set forth above, even if true, VE testified that a sit/stand option would not be a problem for the surveillance systems/alarm monitor position she identified as one of the jobs a hypothetical individual with Plaintiff's limitations could perform. (R. 64). Thus, even assuming that Plaintiff's obesity required him to sit/stand at his option, the vocational expert testimony supports the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff could perform.

Nothing in Social Security Ruling 02-1p, to which Plaintiff cites without elaboration, requires remand on this issue. Ruling 02-1p, titled "Evaluation of Obesity," provides guidance concerning the evaluation of obesity in SSI and DIB claims. S.S.R. 02-1p, 2000 WL 628049. Although the Ruling indicates that the ALJ should evaluate a claimant's obesity at all applicable

steps of the sequential evaluation process, it emphasizes that a diagnosis of obesity does not require a finding of decreased function or disability. Rather, the ALJ must evaluate each case based on the information in that particular case record. See id. As set forth above, the ALJ in this case properly considered Plaintiff's obesity at all applicable steps of the evaluation process. Accordingly, I find no error in this regard.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JASON BYRON FICKES,

    Plaintiff,

vs.

CAROLYN COLVIN, Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 3:13-288

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 4th day of September, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 9) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 14) is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge